1  John Du Wors, State Bar No. 233913
   john@newmanlaw.com
2  Leeor Neta, State Bar No. 233454
   leeor@newmanlaw.com
3  NEWMAN DU WORS LLP
4  1201 Third Avenue, Suite 1600
   Seattle, WA 98101
5  Telephone:    (206) 274-2800
6  Facsimile:    (206) 274-2801

7  Attorneys for Defendants

8

9                    UNITED STATES DISTRICT COURT
10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  Christopher Wagner, an individual,          No. 13-cv-00054-YGR

13              Plaintiff,                       **DEFENDANTS' OPPOSITION TO
                                                 PLAINTIFF'S MOTION TO
14        v.                                     REMAND AND REQUEST FOR
                                                 COSTS**
15  Spire Vision LLC, a Delaware limited liability
    company, et al.,                            The Honorable Yvonne G. Rogers
16                                               Date:  March 5, 2013
17              Defendants                       Time:  2:00 pm
                                                 Location:  Courtroom 5, 2nd Floor
18

19

20

21

22

23

24

25

26

27

28

1
2

# TABLE OF CONTENTS

3  **I.**    **INTRODUCTION** ..................................................................................... 1

4  **II.**   **STATEMENT OF FACTS AND PROCEDURAL HISTORY** ......................... 2

5       A.    Wagner Is A Mere Proxy For His Attorney Daniel Balsam. ...................... 2

6
7       B.    This Court Dismissed Claims Identical To Those Brought By Balsam On Behalf Of A Similarly Situated Plaintiff. .................................................... 2

8       C.    The Present Lawsuit Is Balsam's Second Bite At The Apple....................... 3

9       D.    Nearly Every Single Defendant Is Diverse. ............................................... 3

10
11       E.    The Remaining Three Defendants Are Either Mere Middlemen Or—In One Case—A Party With No Real Connection To The Claims Against The Other Defendants. .............................................................................. 5

12
13       F.    Although Several Defendants Settled With Wagner And Others Could Not Be Identified After A Diligent Search, Every Other Defendant Consented To Removal. ............................................................................ 6

14
15       G.    Although The Spire Vision Family Was Willing To Meet And Confer With Balsam About Remand, Balsam Ignored These Overtures.................. 7

16

17  **III.**   **DISCUSSION**..................................................................................................... 8

18
19       A.    Balsam Filed In State Court For The Sole Purpose Of Avoiding The Preclusive Effect Of Judge Hamilton's Ruling In A Nearly Identical Case. ........................................................................................................ 8

20
21       B.    The Failure Of All Defendants To Consent To Removal Is A Mere Procedural Defect That Does Not Require Remand. ................................... 8

22       C.    The Three Defendants That Are Not Diverse Are Fraudulently Joined. ...... 9

23
24       D.    Defendants Have Established That Wagner's Claims Meet The Minimal Jurisdictional Amount Of $75,000. ............................................................ 13

25       E.    The Court Should Deny Wagner's Request For Attorney's Fees And Costs In Moving For Remand. .................................................................. 14

26
27
28

1

## I.   INTRODUCTION

2      The present lawsuit is simply the latest filed by Daniel Balsam ("Balsam")—on

3  behalf of his proxy clients—against the Spire Vision Family of companies, brands and

4  affiliates. Last year when Balsam made identical claims against the Spire Vision Family,

5  the Honorable Phyllis J. Hamilton of this Court applied Ninth Circuit precedent to

6  dismiss the claims with prejudice, finding that they were pre-empted by the federal CAN-

7  SPAM Act. The present lawsuit—on behalf of Christopher Wagner—presents identical

8  claims. To avoid the preclusive effect of Judge Hamilton's ruling, Balsam filed in state

9  court and joined three sham California defendants. But there is no possibility that Wagner

10 will recover against two of these defendants, one of which was dismissed with prejudice

11 well before removal. Claims against the other sham California defendant—LifeScript,

12 Inc.—bear no connection to the other claims and parties and prove that LifeScript was

13 fraudulently misjoined. It is clear, moreover, that the amount in controversy already

14 exceeds $75,000. All of the identifiable co-defendants have either joined in the removal

15 or have been dismissed with prejudice. Remand is inappropriate.

16     While Balsam also seeks the fees and costs associated with seeking remand, fees

17 are only awarded where there is no objectively reasonable ground for removal. Balsam

18 refused to meet and confer regarding the grounds for removal. There is simply no basis

19 for awarding fees and costs here.

20     Defendants' Opposition to Plaintiff's Motion for Remand and Request for Costs is

21 supported by the accompanying Declaration of Daniel Berger, dated February 8, 2013

22 ("BD"), the accompanying Declaration of John Du Wors, dated February 8, 2013

23 ("DD"), the accompanying Declaration of Leeor Neta, dated February 8, 2013 ("ND"),

24 the accompanying Declaration of Lindsey Rowson, dated February 8, 2013 ("RD"), the

25 accompanying Declaration of Damon Stein, dated February 8, 2013 ("SD"), and the

26 exhibits thereto submitted herewith.

27

28

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

**A.   Wagner Is A Mere Proxy For His Attorney Daniel Balsam.**

California Business and Professions Code, Section 17529.5[1]—California's anti-spam statute—is the cornerstone of Daniel Balsam's ("Balsam") very lucrative practice. (DD, ¶ 2.) For ten years, Balsam has threatened the email marketing industry and wasted invaluable court resources on his specious complaints about spam. (Id.) In either his name or the names of his proxy clients, Balsam has bilked over $1 million in court judgments. (Id.)

**B.   This Court Dismissed Claims Identical To Those Brought By Balsam On Behalf Of A Similarly Situated Plaintiff.**

Spire Vision is a family of companies, one or more of which create and/or distribute email internet advertisements. (BD, ¶ 2.) This family includes XL Marketing Corp.; Mediactivate LLC; Prime Advertisers LLC; Serve Clicks LLC; Spire Vision Holdings, Inc.; Spire Vision, LLC; Ward Media, Inc.; and several other brands and affiliates, together with Achieve Opportunities, AgreeWizard, Digital Publishing Corporation, Juniper Marketing LLC, On Demand Research LLC, Opportunity Central, Paths Direct and Pullsmart ("the Spire Vision Family"). (Id.) Advertising emails sent by the Spire Vision Family are permission-based, and the Spire Vision Family has strict guidelines regarding direct consent. (Id.)

The Spire Vision Family is well-acquainted with Balsam. Between March 2011 and May 2011, Balsam sent a series of demand letters to the Spire Vision Family. (DD, ¶ 3.) In these letters, Balsam alleged that his client and wife, Cathy Riley, was due $118,000 in statutory damages because she received a series of advertising emails for which the Spire Vision Family was allegedly responsible. (Id.) The letters attempt to extort money from the Spire Vision Family by threatening litigation pursuant to Section 17529.5. (Id.) Refusing to be falsely accused and held hostage by Balsam, the

---

[1] Hereinafter, all section references are to the California Business and Professions Code.

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

Spire Vision Family filed a lawsuit in the Northern District of California, Oakland Division, seeking a declaration that the advertising emails do not violate the statute. (Id.) That case is styled *Davison Design and Development, Inc., et al. v. Riley*, N.D. Cal. case no. 4:11-cv-02970-PJH.

Balsam counterclaimed against the Spire Vision Family, asserting a cause of action identical to one raised in the present lawsuit: that the advertising emails violate Section 17529.5 and entitle his client to statutory damages, attorneys' fees and costs. (DD, ¶ 4, Ex. A.) Like the plaintiff here—Christopher Wagner—there was no evidence that Cathy Riley had relied on or been damaged by the advertising emails. (DD, ¶ 5.) On September 13, 2012, the Honorable Phyllis J. Hamilton dismissed the counterclaims with prejudice finding that—absent reliance or tortious injury—they do not sound in tort and are thus preempted by the federal CAN-SPAM Act. (DD, ¶ 6, Ex. B.)

**C.    The Present Lawsuit Is Balsam's Second Bite At The Apple.**

One month later, Balsam filed the present lawsuit in the California Superior Court for Sonoma County. (Dkt. No. 1, Ex. 1.) Like Cathy Riley, Christopher Wagner alleges neither reliance or tortious injury from the receipt of advertising emails. (See id.) Though there is one additional cause of action—alleged violation of Section 17538.5—the Spire Vision Family quickly moved to dismiss it on the basis that Wagner's claims are insufficient under the plain language of that statute. (See Dkt. No. 15.) There is one other telling difference from the allegations that Balsam made on behalf of Riley: here, Wagner seeks $64,000 in liquidated damages and civil fines. (Dkt. No. 1, Ex. 1, Prayer at pp. 33-35.)

**D.    Nearly Every Single Defendant Is Diverse.**

Of the 26 named defendants, 18 are part of the Spire Vision Family:

| Defendant | Status |
|---|---|
| 1.   Achieve Opportunities | Brand owned by Spire Vision |
| 2.   AgreeWizard | Brand owned by Spire Vision |

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

| Defendant | Status |
|---|---|
| 3.   Digital Publishing Corporation | Affiliate of Spire Vision |
| 4.   Futuresdrive | Domain name owned by Spire Vision |
| 5.   Junctionlights | Domain name owned by Spire Vision |
| 6.   Juniper Marketing LLC | Affiliate of Spire Vision |
| 7.   Mediactivate LLC | Spire Vision Member Company |
| 8.   On Demand Research LLC | Affiliate of Spire Vision |
| 9.   Opportunity Central | Brand owned by Spire Vision |
| 10.  Paths Direct | Brand owned by Spire Vision |
| 11.  Prime Advertisers LLC | Spire Vision Member Company |
| 12.  Pullsmart | Brand owned by Spire Vision |
| 13.  Serve Clicks LLC | Spire Vision Member Company |
| 14.  Spire Vision Holdings, Inc. | Spire Vision Member Company |
| 15.  Spire Vision LLC | Spire Vision Member Company |
| 16.  Ward Media, Inc. | Spire Vision Member Company |
| 17.  XL Marketing Corporation | Spire Vision Member Company |
| 18.  Youradshere | Domain name owned by Spire Vision |

(BD, ¶ 2.)

None of the Spire Vision Family defendants are citizens of California for purposes of diversity. Digital Publishing Corporation is incorporated in Delaware and based in the District of Columbia; Juniper Marketing LLC, Mediactivate LLC, Prime Advertisers LLC, and Serve Clicks LLC are incorporated and based in Nevada. (BD, ¶¶ 3-7.) On Demand Research LLC; Spire Vision Holdings, Inc.; Spire Vision LLC; Ward Media, Inc.; and XL Marketing Corp. are incorporated in Delaware and based in New York. (BD, ¶¶ 8-12.) Achieve Opportunities, AgreeWizard, Futuresdrive, Junctionlights, Opportunity Central, Paths Direct, Pullsmart and Youradshere are not true entities, but in fact brands or mere domain names owned by the Spire Vision Family. (BD, ¶¶ 2, 16-18.)

Five of the remaining eight defendants are incorporated and principally based in

1  jurisdictions other than California. AdHarmonics, Inc. is incorporated in Delaware and

2  principally based in Massachusetts. (RD, ¶¶ 2-4, Exs. A-B.) EverydayFamily, Inc. is

3  incorporated in Nevada and maintains only one address in Florida. (RD, ¶¶ 10-12, Exs. F-

4  H.) Insite Marketing Group LLC is incorporated in Nevada and appears to maintain no

5  other location. (RD, ¶¶ 16-18, Ex. J.) LeadRival is incorporated and principally based in

6  Texas. (RD,¶¶ 19-20, Ex. K.) Zulu Marketing LLC is incorporated and maintains only

7  one address in Utah. (RD,¶¶ 24-27, Exs. M-O.)

8
**E.     The Remaining Three Defendants Are Either Mere Middlemen Or—In One**
9  **Case—A Party With No Real Connection To The Claims Against The Other Defendants.**

10      While the last three defendants are principally based in California, Wagner alleges

11  that two of the three—Accelerize New Media, Inc. and Adconion Media, Inc.—are mere

12  "middleman" defendants. (See Dkt. No. 1, Ex. 1, at pp. 3, 11-12.) Wagner concedes that

13  neither Accelerize nor Adconion actually sent or advertised in the emails he received.

14  (See id; SD, ¶¶ 2-4.) Their inclusion in the lawsuit is predicated on an allegation of joint

15  and several liability. (See Dkt. No. 1, Ex. 1, at pp. 11-12; SD, ¶¶ 2-4.)

16      The last defendant—LifeScript, Inc.—is the only entity that is principally based in

17  California and is alleged to have advertised in any email received by Wagner. (See Dkt.

18  No. 1, Ex. 1, at pp. 13, 26.) LifeScript's liability is limited to just three emails received on

19  July 10, 11 and 15, 2012. (See id. at p. 26) Wagner alleges that the three emails contain

20  links to the domain names yourfrequentresources.com, interactivemarketwebnow.com,

21  and centralfastmarketers.com, respectively. (See id.) Wagner further alleges that each of

22  these links redirects through the domain name, targetedspecials.com. (See id.) Wagner

23  then alleges, on information and belief, that targetedspecials.com "is really Spire Vision's

24  affiliate network CommissionWizard.com[.]" (See id.) Wagner thus concludes that

25  LifeScript and the Spire Vision Family are "jointly and severally liable" for the

26  advertising emails. (See id.)

27      The Spire Vision Family does not own any of the referenced domain names,

28  including yourfrequentresources.com, interactivemarketwebnow.com,

5

1    centralfastmarketers.com, and targetedspecials.com. (BD, ¶¶ 19-21.) While the Spire

2    Vision Family does own the CommissionWizard affiliate network, targetedspecials.com

3    is not the Commission Wizard affiliate network. (BD, ¶ 23.) The targetedspecials.com

4    domain name relates to a server associated with the Hitpath affiliate network software,

5    which is an affiliate software platform operated by a third party vendor called Webapps,

6    LLC. (Id.) HitPath is used by hundreds of affiliate networks and tens of thousands of

7    affiliated webmasters. (Id.) The fact that an email Wagner received redirected through the

8    targetedspecials.com domain name does not suggest that it came from the Spire Vision

9    Family. (Id.)

10
11
**F.**    **Although Several Defendants Settled With Wagner And Others Could Not Be Identified After A Diligent Search, Every Other Defendant Consented To Removal.**

12        Shortly after learning that Balsam had filed a complaint alleging identical claims

13    against it—but this time in state court—counsel for the Spire Vision Family planned to

14    remove the matter to federal court. (ND, ¶ 2.) A few Spire Vision Family defendants,

15    including Futuresdrive, Junctionlights, Pullsmart and Youradshere were inadvertently

16    omitted from the initial notice of removal, but have since filed notices of joinder. (Id.; see

17    also Dkt. Nos. 34-37.)

18        Counsel for the Spire Vision Family attempted to obtain the consent of the other

19    eight defendants. (ND, ¶ 3.) It quickly learned that two of the remaining eight—Adconion

20    Media, Inc. and AdHarmonics, Inc.—had already settled with Wagner and that Wagner

21    had filed requests for dismissal with prejudice on November 20, 2012. (ND, ¶ 3, Exs. A-

22    B.) Multiple efforts to reach three of the remaining six defendants—EverydayFamily,

23    Inc.; Insite Marketing Group LLC; and Zulu Marketing LLC—all failed. (RD, ¶¶ 5-9,

24    ¶¶ 13-15, ¶¶ 21-23; ND, ¶¶ 4-6, Exs. C-G.) Even so, counsel found no evidence to

25    suggest that any of these three are incorporated or principally based in California. (RD,

26    ¶¶ 10-12, Exs. F-H; ¶¶ 16-18, Ex. J; ¶¶ 24-27, Exs. M-O.) Two of the remaining

27    defendants—Accelerize New Media, Inc. and LifeScript, Inc.—both consented to

28    removal. (See Dkt. Nos. 28 and 1.) The last defendant—LeadRival—is incorporated and

1  principally based in Texas. (RD, ¶¶ 19-20, Ex. K.) On February 8, 2013, Wagner

2  dismissed his claims against LeadRival with prejudice. (Dkt. No. 39.)

3
4  **G.    Although The Spire Vision Family Was Willing To Meet And Confer With Balsam About Remand, Balsam Ignored These Overtures.**

5        The Spire Vision Family filed a timely notice of removal on January 4, 2013. (See

6  Dkt. No. 1.) On Thursday, January 10, 2013, Balsam emailed Leeor Neta, counsel for the

7  Spire Vision Family, and communicated his belief that no federal diversity jurisdiction

8  exists in this matter. (ND, ¶ 7, Ex. H.) He then invited Mr. Neta to meet and confer on the

9  matter:

10
11         Please consider this email a meet & confer about your voluntarily stipulating to immediately remand to the Superior Court of Sonoma County.  If you refuse, Wagner will move to remand and seek attorneys' fees and costs.
12

13  (Id.) Mr. Neta responded by email before 9:00 am, the very next day (Friday, January

14  11), and agreed to meet and confer, writing:

15
16         Given the number of defending parties, I'd like to have a week to reach out to everyone and discuss their assent to your proposal. I appreciate your patience in this regard.
17

18         Either way, I agree to get back to you by Friday, January 18. Is this acceptable?
19

20  (ND, ¶ 8, Ex. I.) Balsam did not respond to this offer. (ND, ¶ 8.) Instead, Balsam's co-

21  counsel, Timothy Walton, left a voicemail message for Mr. Neta later that day. (Id.) That

22  voicemail message suggested that Mr. Walton had not learned of Mr. Neta's willingness

23  to meet and confer. (Id.) Mr. Neta then sent another email message (also on Friday) to

24  both Balsam and Mr. Walton referring to his earlier offer that he have one week to confer

25  with all of the defendants. (ND, ¶ 9, Ex. J.) Neither Balsam nor Mr. Walton responded to

26  Mr. Neta's offer. (ND, ¶ 9.) Instead, on January 15, they filed a motion to remand and

27  request for costs. (See Dkt. No. 7.)

28

1

2

## III.   DISCUSSION

3

**A.   Balsam Filed In State Court For The Sole Purpose Of Avoiding The Preclusive Effect Of Judge Hamilton's Ruling In A Nearly Identical Case.**

4       At its heart, this case is just one chapter in an extended dispute between Balsam

5   and the Spire Vision Family. In the last chapter, Judge Hamilton of this Court dismissed

6   with prejudice identical claims brought by Balsam on behalf of a similarly-situated

7   plaintiff. (DD, ¶ 6, Ex. B.) Her ruling applied clearly established Ninth Circuit precedent

8   that the federal CAN-SPAM Act preempts complaints regarding advertising emails that

9   fail to allege reliance or compensatory damages. *See Gordon v. Virtumundo, Inc.*, 575

10  F.3d 1040, 1050 (9th Cir. 2009). (Id.)

11      Because Balsam knew that he could never win in federal court, he attempted to

12  craft the present lawsuit in a way that might avoid removal. He chose again to target the

13  Spire Vision Family. But this time, Balsam added several California "middleman"

14  defendants—Accelerize New Media, Inc.; Adconion Media, Inc.; and LifeScript, Inc.—

15  under a joint and several liability doctrine that finds no support in the law. (See Section

16  C, infra.) He also fraudulently misjoined LifeScript, Inc. as an advertiser defendant,

17  despite the fact that the claims against LifeScript have no relation to the other defendants.

18  (See id.) And he prayed for liquidated damages and fines in the amount of only

19  $64,000—while obscuring his prayer for attorneys' fees, costs, and punitive damages that

20  are certain to raise the amount in controversy over the $75,000 threshold.

21      This Court should see through Balsam's attempts to flout Judge Hamilton and

22  avoid the preclusive effect of her ruling. Defendants have already moved to dismiss the

23  new lawsuit under the same arguments presented to Judge Hamilton. (See Dkt. No. 18.)

24  The Court should take this opportunity to refuse remand, hear the motion to dismiss, and

25  demonstrate the impropriety of evading the rulings of this Court.

26

**B.   The Failure Of All Defendants To Consent To Removal Is A Mere Procedural Defect That Does Not Require Remand.**

27

28      Wagner complains that seven defendants were omitted from the notice of removal.

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

He fails to disclose to the Court that he had already filed requests for dismissal with prejudice against two of these—Adconion Media, Inc. and Adharmonics, Inc.—on November 20, 2012, well before removal. (ND, ¶ 3, Exs. A-B.) Since that time, Wagner has also dismissed LeadRival with prejudice. (Dkt. No. 39.) Multiple efforts to reach three of the remaining defendants—EverydayFamily, Inc.; Insite Marketing Group LLC; and Zulu Marketing LLC—have all failed (RD, ¶¶ 5-9, ¶¶ 13-15, ¶¶ 21-23; ND, ¶¶ 4-6, Exs. C-G), and Wagner offers no evidence that these entities still exist. Not one of these entities were advertiser clients of the Spire Vision Family during the operative time period. (See BD, ¶¶ 13-15.) Under these circumstances, the Court should excuse their joinder. The last defendant of which Wagner complains—Accelerize New Media, Inc.—joined in the removal on February 7.  (See Dkt. No. 28.)

Wagner argues that Spire Vision LLC did not garner the consent of all properly served co-defendants at the time of removal, and that this fact alone requires remand. Wagner is mistaken. The Ninth Circuit has held that—absent joinder in the notice of removal of all properly served defendants—"the district court may allow the removing defendants to cure the defect by obtaining joinder of all defendants prior to the entry of judgment." *Destfino v. Reiswig*, 630 F.3d 952, 956-57 (9th Cir. 2011); *see also Soliman v. Philip Morris Inc.*, 311 F.3d 966, 970 (9th Cir. 2002) ("A procedural defect existing at the time of removal but cured prior to entry of judgment does not warrant reversal and remand of the matter to state court"). Judgment has yet to be entered in this case. Even so, nearly every identifiable co-defendant that has not settled with Wagner has now joined in the removal. And none of the defendants that have yet to join in removal are either incorporated or principally based in California. Remand is inappropriate.

**C.    The Three Defendants That Are Not Diverse Are Fraudulently Joined.**

Only three of the 26 defendants named by Wagner—Accelerize New Media, Inc., Adconion Media, Inc., and LifeScript, Inc.—are either incorporated or principally based

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

in California.[2] The Court should disregard these parties for purposes of determining diversity, because they were fraudulently joined. Fraudulent joinder exists where there is no possibility that a plaintiff will be able to establish liability against the putative fraudulently joined party in question. *Ritchey v. Upjohn Drug Co.*, 139 F3d 1313, 1318–1319 (9th Cir. 1998). The complaint concedes that two of these defendants—Accelerize New Media, Inc. and Adconion Media, Inc.—neither sent nor advertised in the subject emails. (See Dkt. No. 1, Ex. 1, at pp. 11-12.) Section 17529.5 holds liable, however, only those persons or entities that advertise themselves:

> It is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances . . .

Section 17529.5(a). The law provides no basis for agency liability. *Balsam v. Trancos*, Inc., 203 Cal. App. 4th 1083, 1110 (Cal. App. 1st Dist. 2012). Thus, even if the Court accepts as true Wagner's allegations that advertisers hired Accelerize New Media, Inc. and Adconion Media, Inc. as their agents, that fact would not present any possibility of establishing liability against them. Because there is no possibility that Wagner could establish a cause of action against these parties in state court—particularly now that Adconion Media, Inc. has been dismissed with prejudice—both are fraudulently joined.

The very last defendant—LifeScript, Inc.—was fraudulent misjoined. Under the fraudulent misjoinder doctrine, federal diversity jurisdiction exists "where diversity is destroyed only through misjoinder of parties." *Asher v. 3M*, No. 04-CV-522-KKC, 2005 U.S. Dist. LEXIS 42266, at *37 (E.D. Ky. June 30, 2005). This doctrine was first recognized by the United States Court of Appeals for the Eleventh Circuit in *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), and has been applied by many courts in the ensuing 15 years. *See*, *e.g.*, *In re Benjamin Moore & Co.*, 318 F.3d

---

[2] In his motion to remand, Wagner suggests without evidence that EverydayFamily, Inc. is principally based in California. Indeed, the evidence is clear that EverydayFamily is principally based in Florida. (RD, ¶¶ 10-12, Exs. F-H.)

OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR

626, 630-31 (5th Cir. 2002) (noting "the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction"); *Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) ("this Court agrees with the Fifth and Eleventh Circuits that the [fraudulent joinder] rule is a logical extension of the established precedent that a plaintiff may not fraudulently join a defendant in order to defeat diversity jurisdiction in federal court") (footnotes omitted).

Fraudulent misjoinder occurs when plaintiffs improperly join different claims that did not arise "out of the same transaction, occurrence, or series of transactions or occurrences," or give rise to common questions of law or fact, as required to satisfy Fed. R. Civ. P. 20(a). *See In re Rezulin Prods. Liab. Litig.*, 168 F. Supp. 2d 136, 144 (S.D.N.Y. 2001) ("Misjoinder of parties occurs when a party fails to satisfy the conditions for permissive joinder under Rule 20(a)."). Upon a finding of fraudulent misjoinder, the court should sever the improperly joined claims into separate and distinct cases and remand only those cases that still lack diversity after severance. *See Grennell v. W. S. Life Ins. Co.*, 298 F. Supp. 2d 390, 396 (S.D. W.Va. 2004) ("when faced with removed, nondiverse, misjoined plaintiffs, the proper course of action for a district court is to sever the claims of the nondiverse plaintiffs so as to protect the right of the removing defendant to litigate in a federal forum"); *In re Rezulin*, 168 F. Supp. 2d at 148 (where "the misjoinder of [a] plaintiff... destroys diversity, the Court will sever [that] action for purposes of maintaining the defendants' right to removal of the remainder of the action").

Courts applying the fraudulent misjoinder doctrine have considered such factors as evidence regarding the plaintiff's motive for adding the party as a defendant; and other relevant circumstances, including the circumstances surrounding when and how the non-diverse party was named in the case. *United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761-62 (9th Cir. 2002) (denying remand where plaintiff failed to state a claim against a non-diverse defendant). Courts have also recognized that the fraudulent misjoinder doctrine applies where a plaintiff's claim against a non-diverse party may not

be subject to dismissal but has no real connection to the claims against the diverse defendants. *See Sutton v. Davol, Inc.*, 251 F.R.D. 500, 505 (E.D. Cal. 2008), citing *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353 (11th Cir. 1996), abrogated on other grounds, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). In *Sutton*, the District Court applied fraudulent joinder to bar remand where the claims against non-diverse defendants were properly stated, but clearly distinct from the separate claims against the diverse defendants. 251 F.R.D. at 505.

The present lawsuit is a prime example of fraudulent misjoinder. Balsam has taken the claims of a plaintiff who shares residency with LifeScript, Inc.—claims that are limited to the receipt of merely 3 emails—and joined them with separate claims and causes of action against 25 other defendants from across the country in a brazen attempt to forestall removal and proceed in state court. LifeScript, Inc.'s joinder is an obvious attempt to avoid the preclusive effect of Ninth Circuit precedent in *Gordon v. Virtumundo, Inc.*, *supra*, and Judge Hamilton's ruling in the *Riley* matter.

The allegations against LifeScript, Inc. are factually distinct and there is no legitimate basis for allowing them to proceed together. The only connection between the allegations against LifeScript, Inc. and the other entities is Wagner's "belief" that a domain name through which he was redirected when he clicked on a link in each of the emails momentarily redirected his browser through a domain name he suspects is owned by the Spire Vision Family or in fact really Spire Vision's Commission Wizard affiliate network. But the Spire Vision Family does not own the domain name targetedspecials.com. (BD, ¶ 22.) Nor is targetedspecials.com associated with Commission Wizard affiliate network. (BD, ¶ 23.) The targetedspecials.com domain name relates to a server associated with an affiliate network software operated by a non-party, Hitpath. (Id.) The fact that an email Wagner received redirected through the targetedspecials.com domain name does not support the conclusion that it came from the Spire Vision Family. (Id.)

Wagner's unsupported supposition and belief do not offer a "real connection to the

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**

1  claims against the diverse defendants." Instead, Wagner's claims against LifeScript, Inc.

2  are clearly distinct from the separate claims against the diverse defendants. The Court

3  should either deny remand or sever the improperly joined claims against LifeScript, Inc.

4  and remand only those claims to state court.

5

6  **D.    Defendants Have Established That Wagner's Claims Meet The Minimal
       Jurisdictional Amount Of $75,000.**

7       Removal is proper if, from the allegations of the Complaint and the Notice of

8  Removal, it is more likely than not that the value of plaintiff's claims exceeds $75,000.

9  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996); *Lucett v. Delta*

10 *Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999). In determining whether the

11 jurisdictional minimum is met, the Court considers all recoverable damages, including

12 statutory penalties, civil fines, punitive damages, disgorgement of profits, costs of suit

13 and attorneys' fees. *See Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001);

14 *Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980-81 (9th Cir. 2005); *Galt G/Sv. JSS*

15 *Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998); *Anthony v. Security Pac. Fin.*

16 *Servs., Inc.*, 75 F.3d 311, 315 (7th Cir. 1996). The Ninth Circuit has held that, "where an

17 underlying statute authorizes an award of attorneys' fees, either with mandatory or

18 discretionary language, such fees may be included in the amount in controversy." *Galt*

19 *G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998); *accord Martin v. Granite*

20 *City Steel Corp.*, 596 F. Supp. 293 (S.D. Ill. 1984) ("claim that discretion should be

21 exercised in favor of plaintiffs makes requested fee part of amount in controversy").

22      Wagner suggests that the amount in controversy includes only those damages and

23 attorneys' fees already incurred at the time of filing. There is no support for this position.

24 The amount in controversy includes those damages that can reasonably be *anticipated* at

25 the time of removal, not merely those already incurred. *Simmons v. PCR Tech.*, 209 F.

26 Supp. 2d 1029, 1035 (N.D.Cal. 2002); *see also Celestino v. Renal Advantage Inc.*, No. C

27 06-07788 JSW, 2007 WL 1223699 (N.D.Cal. April 24, 2007) ("[T]he amount in

28 controversy includes not only damages accrued up to the time of removal, but also a

1   reasonable assessment of damages *likely to be accrued after the time of removal*")

2   (emphasis added).

3          In his Complaint, Wagner seeks $49,000 in liquidated damages, $15,000 in civil

4   fines—or at least $64,000—as well as punitive damages, disgorgement of profits, and

5   attorneys' fees. (See Dkt. No. 1, Ex. 1, Prayer at pp. 33-35.) Wagner's counsel—Daniel

6   Balsam and Timothy Walton—claim that their hourly rates are $250 per hour and $400

7   per hour, respectively. (See Dkt. No. 14, p. 9.) Thus, if Mr. Balsam and Mr. Walton each

8   worked only 17 hours on this case, the amount in controversy would exceed $75,000

9   (e.g., 17 hours at $250 per hour for Balsam [$4,250] and 17 hours at $400 per hour for

10  Walton [$6,800] equals $75,050 when added to the damages figure of $64,000).

11  According to their own declarations, Wagner's counsel performed nearly half as many

12  hours—16 hours to be exact—in seeking remand. (See Dkt. No. 14-1, p. 2; Dkt. No. 14-

13  2, p. 2.) Not included in their declarations are the many hours Mr. Balsam and Mr.

14  Walton have already spent drafting the complaint and several others motions. Thus, even

15  without considering Wagner's claims for punitive damages and disgorgement of profits,

16  Defendants have shown that it is more likely than not that the amount in controversy

17  already exceeds $75,000. Wagner's motion to remand should be denied.

18

19  **E.    The Court Should Deny Wagner's Request For Attorney's Fees And Costs In
         Moving For Remand.**

20         Wagner's request for attorney's fees should be denied. Attorney's fees requested

21  in a motion to remand may be denied where the defendant has an "objectively reasonable

22  ground" for the removal. *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005). Here,

23  the evidence suggests that Plaintiff added parties for the sole purpose of defeating

24  diversity. Defendants moreover have objectively reasonable grounds for removal, as set

25  forth above. Defendants immediately accepted Plaintiff's offer to meet and confer

26  regarding their positions on removal. (See ND, ¶¶ 7-9.) Plaintiff chose to ignore

27  Defendants' overtures and swiftly move for remand. In so doing, Plaintiff should not be

28  able to shift the burden of its fees and costs to Defendants. Accordingly, the Court should

1    deny both Wagner's motion to remand and request for attorneys' fees.

2                        **IV.    CONCLUSION**

3           For the foregoing reasons, Defendants respectfully request that Wagner's motion

4    and request for fees and costs be denied.

5

6

7           Respectfully submitted this 8th day of February 2013.

8

9

                                    **NEWMAN DU WORS LLP**

10

11

                                    s/ John Du Wors

12                                   John Du Wors, State Bar No. 233913
                                    Leeor Neta, State Bar No. 233454
13                                   Attorneys for Defendants
                                    The Spire Vision Family
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPPOSITION TO MOTION TO REMAND AND REQUEST FOR COSTS – 13-0054-YGR**