Timothy J. Walton (State Bar No. 184292)
Jim C. Twu (State Bar No. 175032)
WALTON TWU LLP
9515 Soquel Drive Suite #207
Aptos, CA 95003
Phone: (831) 685-9800
Fax: (650) 618-8687

Daniel L. Balsam (State Bar No. 260423)
THE LAW OFFICES OF DANIEL BALSAM
2912 Diamond Street #218
San Francisco, CA 94131
Tel. & Fax: (415) 869-2873

Attorneys for Plaintiff
CHRISTOPHER WAGNER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)**

| | |
|---|---|
| CHRISTOPHER WAGNER, | ) Case No.   4:13-cv-00054 (YGR) |
| Plaintiff, | ) **PLAINTIFF'S REPLY TO** |
| | ) **DEFENDANTS' OPPOSITION TO** |
| vs. | ) **PLAINTIFF'S MOTION TO REMAND** |
| | ) **TO CALIFORNIA SUPERIOR COURT,** |
| SPIRE VISION LLC *et al*, | ) **AND REQUEST FOR COSTS [28 U.S.C.** |
| | ) **§ 1447(c)]** |
| Defendants. | ) |
| | ) Date:         Mar. 5, 2013 |
| | ) Time:        2:00 p.m. |
| | ) Courtroom: 5, 2nd Floor |
| | ) Judge:       Hon. Yvonne Gonzales Rogers |

i

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................................................. ii

Table of Authorities ............................................................................................................. iii

I.   INTRODUCTION ........................................................................................................1

II.  STATEMENT OF FACTS ...........................................................................................1

III. DISCUSSION ...............................................................................................................3

    A. Spire Vision Is Wrong About Numerous Facts ............................................................3

    B. Spire Vision Did Not Obtain Consent From All Defendants Prior to Removal, and *Still* Has Not Obtained Their Consent to Removal ...............................4

    C. There are Proper California Defendants, and Spire Vision Admits There is No Geographic Diversity ............................................................................................6
        1. *Spire Vision Itself is Located in California* ............................................................6
        2. *Advertising Networks Accelerize New Media Inc. and Adconion Inc. are Proper California Defendants* ..........................................................................6
        3. *LifeScript Inc. is Not Fraudulently Joined* .............................................................10

    D. Spire Vision Has *Not* Established That Wagner's Claims Exceed $75,000 ................11
        1. *Attorneys' Fees are Calculated at the Time of Removal* .......................................11
        2. *Spire Vision Knew that Wagner Dismissed Two Defendants Before Removal, Reducing Wagner's Claims from $64,000 to $50,500* ..........................14

    E. This Court Should Award Wagner His Attorneys' Fees Incurred Due to Spire Vision's Baseless Removal ..................................................................................15

IV.  CONCLUSION ............................................................................................................15

ii

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*Abrego v. Dow Chemical Company*,
    443 F.3d 676 (9th Cir. 2006) ............................................................................................... 13

*Archuleta v. American Airlines, Inc.*,
    2000 U.S. Dist. LEXIS 21076 (C.D. Cal. May 8, 2000) ....................................................... 9

*Asis Internet Services v. Member Source Media LLC*,
    No. C-08-1321 EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20,
    2010) ....................................................................................................................................... 3

*Asis Internet Services v. SubscriberBase Inc.*,
    No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852 (N. D. Cal. Dec. 4, 2009)
    (order granting defendants' motion to dismiss) .................................................................... 3

*Asis Internet Services v. SubscriberBase Inc.*,
    No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010) ......................... 2

*Awasthi v. Infosys Technologies Ltd.*,
    2010 U.S. Dist. LEXIS 57824 (N.D. Cal. May 21, 2010) .................................................. 11

*Birkhead v. Parker*,
    2012 U.S. Dist. LEXIS 148854 (N.D. Cal. Oct. 15, 2012) ................................................... 9

*Celestino v. Renal Advantage Inc.*,
    2007 U.S. Dist. LEXIS 33827 (N.D. Cal. Apr. 24, 2007) (order denying
    plaintiff's motion to remand) ............................................................................................... 12

*Davison Design & Development Inc. v. Riley*,
    No. 4:11-cv-02970 (PJH) (N.D. Cal.) ............................................................................... 2, 3

*Faulkner v. Astro-Med Inc.*,
    1999 U.S. Dist. LEXIS 15801 (N.D. Cal. Oct. 1, 1999) ..................................................... 11

*Galt G/S v. JSS Scandinavia*,
    142 F. 3d 1150 (9th Cir. 1998) ............................................................................................ 12

*Gordon v. Virtumundo Inc.*,
    575 F.3d 1040 (9th Cir. 2009) .......................................................................................... 2, 4

*Green v. Party City Corp.*,
    2002 U.S. Dist. LEXIS 7750 (C.D. Cal. Apr. 9, 2002) ....................................................... 13

*Hoang v. Reunion.com Inc.*,
    No. C-08-3518 MMC, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. Mar. 31,
    2010) (order . . . denying defendants' motion to dismiss first amended
    complaint) .............................................................................................................................. 4

*Hunter v. Philip Morris USA*,
    582 F.3d 1039 (9th Cir. 2009) ............................................................................................... 8

*Kantor v. Wellesley Galleries Ltd.*,
    704 F.2d 1088 (9th Cir. 1983) ............................................................................................. 15

*Kroske v. US Bank Corporation*,
    432 F.3d 976 (9th Cir. 2005) ............................................................................................... 13

*Libhart v. Santa Monica Dairy Co.*,
    592 F.2d 1062 (9th Cir. 1979) ............................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Federal Cases (Cont.)**

*MIC Philberts Investments v. American Casualty Company of Reading*,
    2012 U.S. Dist. LEXIS 80651 (E.D. Cal. June 8, 2012)......................................................13

*Ritchey v. Upjohn Drug Co.*,
    139 F.3d 1313 9th Cir. 1998).................................................................................................9

*Simmons v. PCR Technology*,
    209 F. Supp. 2d 1029 (N.D. Cal. 2002) ..........................................................................12, 13

*Singer v. State Farm Mutual Auto Insurance Co.*,
    116 F.3d 373 (9th Cir. 1997) ..............................................................................................13

*United Steel v. Shell Oil Company*,
    549 F.3d 1204 (9th Cir. 2008) ..............................................................................................4

*Valdez v. Allstate Insurance. Company*,
    372 F.3d 1115 (9th Cir. 2004) ......................................................................................11, 12

**California Cases**

*Balsam v. Trancos Inc. et al*,
    203 Cal. App. 4th 1083 (1st Dist. 2012), *petition for review denied*, 2012
    Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012
    U.S. LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*,
    2013 U.S. LEXIS 243 (U.S. Jan. 7, 2013) .........................................................................6, 7

*Hypertouch v. ValueClick Inc.*,
    192 Cal. App. 4th 805 2d Dist. 2011) ...................................................................................6

*Infinite Monkeys & Co., LLC v. Global Resource Systems Corp.*,
    No. 1-05-CV039918 (Super. Ct. Cal. Cty. of Santa Clara Sep. 14, 2005)
    (order re: demurrer, motion to strike, and motion for preliminary
    injunction)........................................................................................................................8, 10

**Federal Statutes**

28 U.S.C. § 1446...............................................................................................................................4
28 U.S.C. § 1332........................................................................................................................6, 11
28 U.S.C. § 1447.............................................................................................................................15
CAN-SPAM Act, 15 U.S.C. § 7701 *et seq.* ..................................................................................2, 4

**California Statutes**

Cal. Bus. & Prof. Code § 17529.5 ........................................................................................ *passim*
Cal. Bus. & Prof. Code § 17538.5 ...................................................................................................14

## I. INTRODUCTION

Spire Vision LLC removed this Action from the Superior Court of California, County of Sonoma, claiming diversity. Plaintiff Christopher Wagner ("Wagner") filed a [Renewed] Motion to Remand (Docket #14) because there are California Parties on both sides, Spire Vision did not allege that the amount in controversy exceeded $75,000 at the time of removal, and Spire Vision failed to obtain consent to remove from all of the Defendants who had been served.

In between unwarranted and inaccurate personal attacks at Daniel Balsam ("Balsam"), one of Wagner's attorneys, Spire Vision's Opposition (Docket #43) spins a tangled web of falsities to attempt to justify federal jurisdiction. The Opposition is supported by no less than five declarations, but nothing in the Opposition changes the underlying facts. This Court should see through Spire Vision's malarkey, remand this Action to state court, and award Wagner his attorneys' fees.

## II. STATEMENT OF FACTS

Wagner incorporates by reference the Statement of Facts from his Motion to Remand at 3:20-4:9 and adds the following facts:

Wagner first approached Balsam to ask for representation in suing unlawful spammers, not the other way around. Difficult as it may be for Spire Vision to conceive, Wagner is an independent individual, and not a proxy for Balsam, *see* Opposition at 1:3 and 2:2-8, and Wagner developed his dislike for unlawful spam entirely without Balsam's aid. Declaration of Christopher Wagner ("Wagner Decl.") at ¶ 2.

Notwithstanding Spire Vision's Opposition at 2:6-8, Balsam has never "bilked" spammers out of any money, whether acting on his own behalf or while representing clients. Balsam and his clients (including Wagner) have done nothing more than exercise the rights granted to them by the California Legislature via California Business & Professions Code

1

§ 17529.5 ("Section 17529.5") to make claims against unlawful spammers. Declaration of Daniel Balsam ("Balsam Decl.") at ¶ 2, Wagner Decl. at ¶ 2.

On September 13, 2012, Judge Hamilton *initially* dismissed Riley's counter-claims under Section 17529.5 in the matter of *Davison Design & Development Inc. v. Riley*, No. 4:13-cv-02970 (PJH), currently pending in the Northern District of California, but she did not apply Ninth Circuit precedent.[1] The Declaration of John Du Wors at ¶ 6 (Docket #47) and the Opposition at 3:9-12 attempt to mislead this Court by omitting the fact that on January 16, 2013, Judge Hamilton denied Spire Vision's Motion for Summary Judgment *and* partially reversed her previous order when she orally stated that Riley's claims were *not* entirely preempted, and that she would allow Riley to reinstate some of her claims that were previously dismissed. Judge Hamilton has not yet issued a written order. Balsam Decl. at ¶ 3.

On January 10, 2013, Balsam sent an email to Spire Vision's attorney Leeor Neta stating that this federal Court does not have jurisdiction in this matter and demanding that Spire Vision *immediately* stipulate to remand to state court; otherwise Wagner would move to remand and seek attorneys' fees and costs. *See* Declaration of Leeor Neta, Exhibit H (Docket #46-8). Neta asked for a week to obtain the other Defendants' assent, which is rather suspect in light of the fact that Spire Vision LLC did not obtain the other Defendants' consent to remove the Action in the first place, *infra*. Neta did not immediately stipulate to remand, so Wagner filed his Motion to Remand shortly thereafter as he warned he would do. Balsam Decl. at ¶ 4.

---

[1] Based on markedly different facts, the Ninth Circuit case to which Spire Vision refers, *Gordon v. Virtumundo*, 575 F.3d 1040 (9th Cir. 2009), ruled that the federal CAN-SPAM Act preempted Washington's anti-spam law not based on the question of whether the exception to preemption is based on fraud or falsity, but rather because Washington's anti-spam law was overbroad, prohibiting even truthful spam. In contrast, Section 17529.5 is limited to false and misleading spam. *See Asis Internet Services v. SubscriberBase Inc.*, No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645 at *31-32 (N.D. Cal. Apr. 1, 2010).

# III.  DISCUSSION

## A.  Spire Vision Is Wrong About Numerous Facts

Spire Vision begins its Opposition by attacking one of Wagner's attorneys.  Spire Vision proceeds to refer to Balsam throughout, even though Balsam is neither a Party to this Action nor the only attorney representing Wagner.  Wagner is not a proxy for anybody.  Wagner wanted to sue Spire Vision for its unlawful spamming and he chose his attorneys carefully.

Spire Vision's counsel have accused another member of the California State Bar of "bilking" money from the email marketing industry and wasting court resources.  Opposition at 2:6-8 and Du Wors Decl. at ¶ 2 (Docket #47).  They provide no factual support, much less evidence, but simply attempt to smear Balsam's name.  Similarly, they misrepresent the nature of the *Davison* action.  Neither the plaintiffs nor the claims are similar, much less identical, and the judge in that case has indicated on the record that she is reversing her decision about claims against Spire Vision, as well as denying Spire Vision's motion for summary judgment.

Spire Vision is also mistaken in asserting that all torts require reliance and damages.  But the issue now before this Court is whether to remand.

As much as Spire Vision would love to tell this Court what it "must do," Judge Hamilton's unpublished ruling in the *Davison* action is *not* preclusive on *this* Court.  *See* Opposition at 1:8, 8:22, and 12:13-14.  This Court is *not* bound by the ruling of another District Court judge.  In fact, if Spire Vision were correct that one District Court's ruling is binding on another, then Judge Hamilton and this Court would both be bound by the earlier rulings of at least three District Courts from the Northern District of California,[2] all *after* the Ninth Circuit's

---

[2] *Asis Internet Services v. Member Source Media LLC*, No. C-08-1321 EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010); *Asis v. SubscriberBase,* No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852 (N. D. Cal. Dec. 4, 2009) (order granting defendants' motion to dismiss);

1  ruling in *Gordon*, that ruled that spam recipients' claims under Section 17529.5 are *not*
2  preempted by the federal CAN-SPAM Act.

3  Spire Vision did not obtain consent to removal from all Defendants who had been served
4  at the time. Indeed, Spire Vision *still* has not obtained everyone's consent. Spire Vision
5  attempts to explain away its failure to obtain EverydayFamily Inc., Insite Marketing Group LLC,
6  and Zulu Marketing LLC's consent by suggesting that those Defendants do not even exist.
7  Opposition at 9:7. However, all three have been served, and Wagner's attorneys have had
8  conversations with representatives of EverydayFamily and Zulu Marketing. Balsam Decl. at
9  ¶¶ 5-6 and Ex. A, Walton Decl. at ¶ 2.

10 Spire Vision claims that Wagner seeks to avoid the *purportedly* preclusive ruling of
11 another District Court Judge, when in fact it is trying to avoid the *actually* preclusive rulings of
12 two California State Courts of Appeal.

**B. Spire Vision Did Not Obtain Consent From All Defendants Prior to Removal, and *Still* Has Not Obtained Their Consent to Removal**

All defendants who have been joined and served in a state court action must join or consent to remove the action to federal court. 28 U.S.C. § 1446(b)(2)(A).

The "failure" of all Defendants in this Action to consent to removal is *not* a "mere procedural defect." Opposition at 8:27. Spire Vision's claim that "*nearly* every identifiable co-defendant that has not settled with Wagner has now joined in the removal," Opposition at 9:21-22 (emphasis added) is insufficient, as it does not comply with the "Rule of Unanimity," which "has traditionally required that *all* defendants consent to, or join in, removal." *United Steel v. Shell Oil Company*, 549 F.3d 1204, 1208 (9th Cir. 2008) (emphasis added).

---

*Hoang v. Reunion.com Inc.*, No. C-08-3518 MMC, 2010 U.S. Dist. LEXIS 34466 (N.D. Cal. Mar. 31, 2010) (order . . . denying defendants' motion to dismiss first amended complaint).

**4**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

1   As noted in Wagner's Motion to Remand, Wagner served all Defendants before Spire
2   Vision LLC removed this Action to federal court. LeadRival did not consent to removal before
3   Wagner dismissed it. Declaration of Daniel Balsam in Support of Motion to Remand at ¶ 7 and
4   Ex. F. (Docket #14-1). EverydayFamily Inc., Insite Marketing Group LLC, and Zulu Marketing
5   LLC did not consent prior to removal, and *still* have not consented as of February 15, as Wagner
6   files this Reply. Spire Vision makes the argument that "Wagner offers no evidence that these
7   entities still exist," Opposition at 9:7, but all three have been served, and Wagner's attorneys
8   have had conversations with representatives of EverydayFamily Inc. and Zulu Marketing LLC.
9   Balsam Decl. at ¶¶ 5-6 and Ex. A, Walton Decl. at ¶ 2.

10   Furthermore, Spire Vision's attempt to gloss over the fact that EverydayFamily, Insite
11   Marketing Group, and Zulu Marketing did not consent to removal by claiming that they were not
12   advertiser clients during the operative time period, Opposition at 9:7-9 and Declaration of Daniel
13   Berger at ¶¶ 13-15 (Docket #44), does not comport with the facts:

- Wagner received six spams advertising EverydayFamily from May 4-12, 2012. Three spams were sent from the domain names *themagnify.net*, *theinitial.net*, and *thetraction.net*, which are registered to YourAdsHere, and Spire Vision admits it owns the domain name. Verified Complaint at ¶¶ 67-69, Balsam Decl. at ¶ 7 and Ex. B, and Opposition at 4:17. Three spams were sent from the domain names *eprimary.net*, *myimpactful.net*, and *thededicatedblog.com*, which are registered to FurturesDrive [sic], which Spire Vision admits is one of its "brands." Verified Complaint at ¶¶ 67-69, Balsam Decl. at ¶ 8 and Ex. C, and Opposition at 4:3.

- Wagner received one spam advertising Insite Marketing Group on April 20, 2012, sent from the domain name *mycircumstances.com*, which is registered to AgreeWizard, which Spire Vision admits is one of its "brands." Verified Complaint at ¶¶ 61-63, Balsam Decl. at ¶ 9 and Ex. D, and Opposition at 3:27.

- Wagner received three spams advertising Zulu Marketing on May 5-7, 2012. Two were sent from the domain names *eprglobal.com* and *engagementtarget.com*, which are registered to PullSmart, which Spire Vision admits is one of its "brands." Verified Complaint at ¶¶ 79-81, Balsam Decl. at ¶ 10 and Ex. E, and Opposition at 4:11. One was sent from the domain name *eproductiveblog.com*, which is registered to AgreeWizard, which Spire Vision admits is one of its

**5**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

"brands." Verified Complaint at ¶¶ 79-81, Balsam Decl. at ¶ 11 and Ex. F, and Opposition at 3:27.

## C. There are Proper California Defendants, and Spire Vision Admits There is No Geographic Diversity

### 1. Spire Vision Itself is Located in California

Spire Vision's boldfaced section heading states that "*Nearly* Every Single Defendant is Diverse." Opposition at 3:23 (emphasis added). Thus, Spire Vision admits that there is not *complete* diversity, as is required for federal jurisdiction. See 28 U.S.C. § 1332(a)(1).

Wagner sued 18 Spire Vision Defendants in this Action, including "JunctionLights" and "YourAdsHere," business entities of unknown organization, which claim business addresses in Rosemead, California. Verified Complaint at ¶¶ 27, 31 and Balsam Decl. at ¶ 12 and Ex. G.

Spire Vision admits that eight of the Spire Vision Defendants, including JunctionLights and YourAdsHere – are "brands" or "mere domain names" owned by Spire Vision… not "true entities." Opposition at 3:26-4:27. Therefore, by Spire Vision's own admission, since JunctionLights and YourAdsHere are *not* legal companies but rather brands or domain names, then logically Spire Vision *itself* is located in California, defeating geographic diversity.

### 2. Advertising Networks Accelerize New Media Inc. and Adconion Inc. are Proper California Defendants

*Hypertouch v. ValueClick Inc. et al* expressly held that advertisers are strictly liable for unlawful spamming by their agents. 192 Cal. App. 4th 805, 820-21, 829 (2d Dist. 2011). *Balsam v. Trancos Inc. et al* also held that advertisers' contracted agents are liable for unlawful spams when it affirmed the trial court's judgment against Trancos; plaintiff had dismissed the advertisers prior to trial. 203 Cal. App. 4th 1083, 1088 (1st Dist. 2012), *petition for review denied*, 2012 Cal. LEXIS 4979 (Cal. May 23, 2012), *petition for certiori denied*, 2012 U.S.

**6**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

1  LEXIS 8423 (U.S. Oct. 29, 2012), *petition for rehearing denied*, 2013 U.S. LEXIS 243 (U.S.

2  Jan. 7, 2013).

3  Wagner did describe Accelerize New Media Inc. ("Accelerize") and Adconion Inc. ("Adconion") as "middlemen" in the Verified Complaint at ¶¶ 34-35, *see* Opposition at 5:10-13, by which Wagner meant that: a) Spire Vision (Juniper Marketing LLC) hired Accelerize, and Accelerize hired Adconion, and Adconion outsourced to others to actually hit the send button, or b) Spire Vision (On Demand Research LLC) hired Accelerize to send the spams, and Accelerize outsourced to Spire Vision (AgreeWizard, Opportunity Central, Paths Direct, and YourAdsHere) to actually hit the send button. Wagner did *not* concede that neither Accelerize nor Adconion sent or advertised in the emails he received. *Id*. Verified Complaint at ¶¶ 34-35. Wagner implicitly alleged agent-principal liability, and expressly alleged joint and several liability. *Id*.

12  By claiming that Accelerize and Adconion are "sham" defendants, Opposition at 1:9, Spire Vision is in effect arguing that even though both the advertiser (at the top of the ladder) and the spammer (at the bottom of the ladder) are undisputedly liable for unlawful spamming, the networks whom Spire Vision hired and who in turn hired the spammers are somehow *not* liable. Such an argument has little merit, particularly because agent-principal liability is a "vertical" concept, and it is difficult to conceive how liability can flow "up the ladder" with a *non*-liable party in between the bottom and top rungs, breaking the flow of liability.

19  Even if Accelerize could avoid liability for the unlawful spams on a vertical agent-principal theory (Wagner has dismissed Adconion), Wagner could amend the Verified Complaint to allege that Accelerize is liable on the basis of civil conspiracy. Indeed, for the nine of the spams, Spire Vision hit the send button, and a recipient who clicked the links in these spams would be redirected through Accelerize dba *cktrk.net* and land at On Demand Research LLC's

**7**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

website.  Verified Complaint at ¶¶ 86-94.  Accelerize knew with whom it was contracting, and the spam links would not have functioned without Accelerize's participation.

Wagner is not aware of any California Court of Appeal cases specifically addressing the liability of entities such as Accelerize and Aconion under substantive California law, but Wagner submits as persuasive authority a trial court order in the matter of *Infinite Monkeys & Co., LLC v. Global Resource Systems Corp.*, which stated that *all parties* involved in spamming are liable.

> The Court finds that the Legislature intended the phrase "advertise in a commercial e-mail advertisement" contained in Business and Professions Code § 17529.5(a) to be construed broadly and to include all entities involved in the creation and dissemination of an e-mail advertisement.  Thus the entity that sponsored a commercial email-advertisement, the parties that prepared and organized the dissemination of the advertisement, and the parties that effected delivery of the e-mail to recipients are all proper defendants in a Business & Professions Code § 17529.5(a) cause of action.  Any other construction of the statute would . . . fail to achieve the Legislative purpose stated in Business & Professions Code § 17529.

No. 1-05-CV039918 at *1-2 (Super. Ct. Cal. Cty. of Santa Clara Sep. 14, 2005) (order re: demurrer, motion to strike, and motion for preliminary injunction).  *See* Balsam Decl. at ¶ 13 and Ex. H.  Wagner's Motion to Remand is not the proper vehicle to fully argue Accelerize and Adconion's liability on the merits, but Wagner points to *Infinite Monkeys* to show that it is *possible* that a trial court could find them liable.  This possibility is sufficient to require remand, so there is no fraudulent joinder, as discussed below.

In *Hunter v. Philip Morris USA*, the Ninth Circuit cited a Fifth Circuit case with approval, holding that

> "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." . . . . "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary."

582 F.3d 1039, 1044 (9th Cir. 2009) (citations omitted).  Similarly:

**8**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

> The removing defendant's burden of demonstrating that the non-diverse defendant's joinder is a "sham" is a heavy one. In determining whether a non-diverse defendant's joinder is fraudulent, the court must resolve all disputed questions of fact, and all ambiguities in the controlling state law, in favor of the non-removing party. All doubts concerning the sufficiency of a cause of action because of inartful, ambiguous or technically defective pleading must be resolved in favor of remand, and a lack of clear precedent does not render the joinder fraudulent.
>
> Applying these standards, if there is even a possibility that plaintiff may prevail, remand is warranted. "The removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in-state defendant in state court . . .,". The court's job is not to determine whether the plaintiff will actually or even probably prevail on merits of his claim, but rather to evaluate whether there is any possibility plaintiff may do so. For this reason, merely showing that an action is likely to be dismissed as against the purported "sham" defendant does not demonstrate fraudulent joinder. . . .

*Archuleta v. American Airlines, Inc.*, 2000 U.S. Dist. LEXIS 21076 at *16-17 (C.D. Cal. May 8, 2000) (citations omitted). And, just four months ago in the Northern District:

> The defendant seeking removal based on fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant, but must show that there is no possibility that the plaintiff could prevail on any cause of action it brought against the non-diverse defendant.
>
> . . . Given Defendants' heavy burden of persuasion and the presumption against finding fraudulent joinder, Defendants have not demonstrated that Parker is a fraudulently joined defendant. Plaintiff's motion to remand is therefore granted.

*Birkhead v. Parker*, 2012 U.S. Dist. LEXIS 148854 at *9-10 (N.D. Cal. Oct. 15, 2012).

Accelerize attempts to separate itself altogether from the spams at issue in this Action, but the Declaration by Damon Stein, general counsel for a division of Accelerize (Docket #45), does not achieve that goal. First, Stein claims that it sold its online marketing division in September 2012, but even if true, it is irrelevant, because Wagner received the spams involving Accelerize from May-July 2012. Verified Complaint at ¶¶ 86-94 and 105-111.

Second, Wagner disputes Stein's claim that Accelerize has no relation to the facts alleged in this lawsuit. After a recipient clicks the links in some of the spams at issue, s/he is redirected

**9**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

through *cktrk.net* en route to landing pages belonging to Juniper Marketing LLC or On Demand Research LLC (Spire Vision companies). Verified Complaint at ¶¶ 86-94 and 105-107; Balsam Decl. at ¶ 14 and Ex. I. *Cktrk.net* was proxy-registered to hide the identity of the operator of the domain name, but Domains By Proxy Inc. (which, incidentally, prohibits all use of its services for spamming) identified Accelerize as the registrant of the domain name. Balsam Decl. at ¶ 15 and Ex. J-K. By its own admission, Accelerize makes it "so easy for our customers to target their campaigns based on location, mobile device and traffic source" and its "suppression list management integrates with third party solutions." Balsam Decl. at ¶ 16 and Ex. L. Therefore, Accelerize admits to sending, assisting with sending, or conspiring to send commercial emails, because campaign targeting and list suppression are both part of the sending process.

*Infinite Monkeys* suggests that a trial court may find Accelerize (and Adconion, if Wagner hadn't already dismissed it) liable for its role in the unlawful spamming at issue in this Action, so Wagner maintains that Accelerize is a proper Defendant. If there is *any* possibility that Wagner can establish liability against Accelerize under Cal. Business & Professions Code § 17529.5, this Court should remand. *See also Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318-19 (9th Cir. 1998).

### 3. LifeScript Inc. is Not Fraudulently Joined

Spire Vision claims that it does not own the domain name *targetedspecials.com*, and that *targetedspecials.com* is not associated with Spire Vision's Commission Wizard affiliate network, Opposition at 12:8-27, and therefore the LifeScript spams have nothing to do with Spire Vision.

However, a visit to the *www.targetedspecials.com* website shows that it is, in fact, Spire Vision's Commission Wizard affiliate network. In fact, the *www.targetedspecials.com* website displays Spire Vision's logos, trademarks, and copyright notice. Balsam Decl. at ¶ 17 and Ex. M. Moreover, the *www.commissionwizard.com*, *www.targetedspecials.com*, and *www.ondemand*

*affiliates.com* websites (the latter presumably related to On Demand Research LLC, a Spire Vision company) are all on hosted on the same server located at IP address 67.215.174.103. Balsam Decl. at ¶ 18 and Ex. N.

**D.  Spire Vision Has *Not* Established That Wagner's Claims Exceed $75,000**

    *1.  Attorneys' Fees are Calculated at the Time of Removal*

For a federal court to have jurisdiction, in addition to complete geographic diversity, the amount in controversy must also exceed $75,000.  28 U.S.C. § 1332(a).  Wagner and Spire Vision agree that attorneys' fees are included in the calculation, *but* Spire Vision argues that

> There is no support for [Wagner's] position [] that the amount in controversy includes only those damages and attorneys' fees already incurred at the time of filing.

Opposition at 13:22-23.  Spire Vision is wrong; Wagner does have support.

"Removal jurisdiction requires complete diversity both at the time of commencement of the action *[and] at the time of removal*; both must be alleged in the notice of removal." *Awasthi v. Infosys Technologies Ltd.*, 2010 U.S. Dist. LEXIS 57824 at *21-22 (N.D. Cal. May 21, 2010) (emphasis added). "The amount in controversy is determined as of the date of removal.  A speculative argument as to the amount in controversy is insufficient." *Faulkner v. Astro-Med Inc.*, 1999 U.S. Dist. LEXIS 15801 at *5 (N.D. Cal. Oct. 1, 1999).

In *Valdez v. Allstate Insurance. Company*, the Ninth Circuit held that

> Since "it [was] not facially evident from the complaint that more than $ 75,000 [was] in controversy," Allstate should have "proven, by a preponderance of the evidence, that the amount in controversy [met] the jurisdictional threshold." [] Allstate did not.  Its only effort was the statement in its "Petition for Removal" that "upon information and belief, [it] submits that the amount in controversy . . . exceeds $ 75,000.00."  "Information and belief" hardly constitutes proof "by a preponderance of the evidence."  []  "Conclusory allegations as to the amount in controversy are insufficient."  To discharge its burden, Allstate needed to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds that amount." . . . [A] conclusory allegation "neither overcomes the 'strong presumption' against removal jurisdiction, nor satisfies [the

**11**

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

>defendant]'s burden of setting forth, in the removal petition itself, the *underlying facts* supporting its assertion that the amount in controversy exceeds" the applicable dollar value.

372 F.3d 1115, 1117 (9th Cir. 2004) (citations omitted; emphasis in original).

Here, Spire Vision's Notice of Removal at ¶ 8 (Docket #4) claims that "Plaintiff's fee claim *potentially* exceeds $26,000, causing the amount in controversy to exceed $75,000" (emphasis added). Spire Vision failed to state facts in support of its conclusory assumption. Spire Vision did not allege that the amount in controversy – including Wagner's attorneys' fees *at that time* – exceeded $75,000; therefore, there was not complete diversity.

Spire Vision's citation in its Opposition at 13:26-14:2 to *Celestino v. Renal Advantage Inc.*, 2007 U.S. Dist. LEXIS 33827 (N.D. Cal. Apr. 24, 2007) (order denying plaintiff's motion to remand) does not help its position. While the order does include the quoted text – "[T]he amount in controversy includes not only damages accrued up to the time of removal, but also a reasonable assessment of damages likely to be accrued," *id*. at *11, Spire Vision incorrectly reads *damages* as if it said *attorneys' fees*. In fact, the court noted that at the time of removal, Celestino had already claimed a loss of *income and benefits* exceeding $55,000 and stated that he would be out of work for six months, costing him more than $39,000 in future loss of *income and benefits*. *Id*. at *11-12. Thus, the ruling had nothing to do with anticipated *attorneys' fees*.

Wagner admits that in *Simmons v. PCR Technology*, 209 F. Supp. 2d 1029, 1034 (N.D. Cal. 2002), the District Court included anticipated attorneys' fees to determine the amount in controversy. *See* Opposition at 13:25-26. However, Wagner points out that the *Simmons* court reached its conclusion based on *Galt G/S v. JSS Scandinavia*, 142 F. 3d 1150 (9th Cir. 1998), and in *Galt G/S*, federal subject matter jurisdiction depended on the fact that one party was claiming $13,500 plus $44,266.65 in attorneys' fees *actually incurred*, such that the total exceeded the $50,000 threshold amount in controversy *at the time of removal*. *Id.* at 1155.

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

1   Moreover, *Simmons* is a District Court case from 2002, and Wagner noted in his Motion
2   to Remand that two newer Ninth Circuit cases – *Abrego v. Dow Chemical Company*, 443 F.3d
3   676, 690 (9th Cir. 2006) and *Kroske v. US Bank Corporation*, 432 F.3d 976, 980 (9th Cir. 2005)
4   – support his position that the amount in controversy depends on attorneys' fees at the time of
5   removal.  *See also Singer v. State Farm Mutual Auto Insurance Co.*, 116 F.3d 373, 377 (9th Cir.
6   1997) (ruling that the amount in controversy is determined at the time of removal).

7   Spire Vision attempts to include Wagner's attorneys' time spent seeking remand and
8   several others [sic] motions into the amount in controversy.  Opposition at 14:11-14.  But as
9   established above, this time is irrelevant; because those hours were spent *after* Spire Vision had
10  already removed this Action.  The only thing that Wagner's attorneys did prior to removal was
11  prepare, file, and serve the Verified Complaint.  *See Green v. Party City Corp.*, 2002 U.S. Dist.
12  LEXIS 7750 at *7 and n.3 (C.D. Cal. Apr. 9, 2002) (noting that the amount of fees incurred up to
13  the point of removal is *de minimus* . . . because the only work done by plaintiff's counsel prior to
14  removal was the filing of the complaint).

15  A 2012 quote from the Central District of California best sums up this subsection:

> While the Ninth Circuit Court of Appeals has not yet spoken on the issue, the Court notes that it appears that a nascent consensus may be emerging among the district courts of this Circuit, finding that *attorneys' fees not yet incurred may not be included in the amount in controversy calculation.  See Reames v. AB Car Rental Servs.*, 2012 U.S. Dist. LEXIS 31956 (D. Or. Feb. 2, 2012) (split among the Ninth Circuit is best resolved by adoption of the reasoning that attorney fees anticipated but unaccrued at the time of removal are not properly in controversy for jurisdictional purposes).

*MIC Philberts Investments v. American Casualty Company of Reading*, 2012 U.S. Dist. LEXIS 80651 at *16 (E.D. Cal. June 8, 2012) (emphasis added).

### 2. *Spire Vision Knew that Wagner Dismissed Two Defendants Before Removal, Reducing Wagner's Claims from $64,000 to $50,500*

Furthermore, Spire Vision's math is incorrect, because Spire Vision knew that Wagner had dismissed two Defendants before removal. Spire Vision's attorney Neta stated that shortly after learning of this Action, and *before* removing the Action, he learned that Wagner had dismissed Adconion and AdHarmonics Inc. Neta Decl. at ¶¶ 2-3 (Docket #46).

Of the 49 spams at issue in this Action, 11 involved Adconion and one of those 11 also involved AdHarmonics. Verified Complaint at ¶¶ 55-60 and 105-111. Wagner seeks the statutory remedy of $1,000 per spam pursuant to Section 17529.5. *Id.* at ¶¶ 7, 153. By dismissing those two Defendants, who accounted for 11 spams, Wagner reduced the amount in controversy under Section 17529.5 by $11,000 to **$38,000** before removal.

Furthermore, Spire Vision dba JunctionLights sent the Adharmonics/Adconion spam, and JunctionLights claims its address to be a box at the branch of The UPS Store in Rosemead, California. *Id.* at ¶¶ 55, 57 and Balsam Decl. at ¶ 12 and Ex. G. Thus, this spam constituted one of Wagner's six claims for violations of Section 17538.5, which carries a civil fine of $2,500 per violation. *Id*. at ¶¶ 164-165. By dismissing the Adharmonics/Adconion spam, Wagner reduced the amount in controversy under Section 17538.5 by $2,500 to **$12,500** before removal.

In short, whereas Spire Vision claims the amount in controversy was **$64,000** for liquidated damages and civil fines at the time of removal (not including punitive damages, disgorgement of profits, and attorneys' fees, which were and still are entirely speculative and thus not included in the amount in controversy for jurisdictional purposes), the amount in controversy was actually **$50,500**. Spire Vision does not claim that Wagner incurred more than $24,500 for attorneys' fees for writing, filing, and serving the Verified Complaint, such that the amount in controversy at the time of removal exceeded $75,000.

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION TO REMAND AND REQUEST FOR COSTS**

**E. This Court Should Award Wagner His Attorneys' Fees Incurred Due to Spire Vision's Baseless Removal**

Spire Vision did not attempt to meet and confer with Walton, lead attorney, either before or after removal.  Spire Vision did not agree to Balsam's demand to immediately stipulate to remand the Action.  There were no objective grounds for removal in the first place.  Spire Vision's purpose for removing to Federal Court was to delay the proceedings.  The removal was frivolous; 28 U.S.C. § 1447(c) authorizes attorneys' fees and costs for a successful remand; and this is precisely the sort of situation that justifies the statute.

Wagner asks this Court to award him his costs, including attorneys' fees, to be paid jointly and severally against Spire Vision LLC and its attorneys Newman Du Wors.  Wagner increases his request to $7,275 (24.3 hours at $250 per hour for Balsam and 3.0 hours at $400 per hour for Walton) associated with remanding this Action to state court.  Balsam Decl. at ¶ 19, Walton Decl. at ¶ 3.

## IV.  CONCLUSION

Any doubt as to whether federal jurisdiction exists is resolved *against* a finding of federal jurisdiction.  *Kantor v. Wellesley Galleries Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983).  The removal statute is similarly strictly construed against federal jurisdiction.  *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).  For the reasons set forth above, this Court should remand this Action to the Superior Court of California, County of Sonoma and order Spire Vision and its attorneys, jointly and severally, to pay Wagner's attorneys' fees incurred for remand in the amount of $7,275.

THE LAW OFFICES OF DANIEL BALSAM

Dated:  February 15, 2013         /s/ Daniel L. Balsam
                                  Daniel L. Balsam
                                  Attorney for Plaintiff Christopher Wagner