John Du Wors, State Bar No. 233913
john@newmanlaw.com
Leeor Neta, State Bar No. 233454
leeor@newmanlaw.com
NEWMAN DU WORS LLP
1201 Third Avenue, Suite 1600
Seattle, WA 98101
Telephone:    (206) 274-2800
Facsimile:     (206) 274-2801

Attorneys for Defendants

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Christopher Wagner, an individual,<br><br>Plaintiff,<br><br>v.<br><br>Spire Vision LLC, a Delaware limited liability company, et al.,<br><br>Defendants | No. 13-cv-00054-YGR<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>The Honorable Yvonne G. Rogers<br>Date:  March 5, 2013<br>Time:  2:00 pm<br>Location:  Courtroom 5, 2nd Floor |

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................. 1

II. STATEMENT OF FACTS AND PROCEDURAL HISTORY ......................... 1

    A. Wagner Is Misleading This Court About The Related *Davison* Action. ...... 1

III. DISCUSSION ..................................................................................... 3

    A. The Ninth Circuit Has Unequivocally Held That CAN-SPAM Preempts Anything Other Than Traditional Tort Theories Of Fraud Or Deception. ... 3

    B. Wagner Errs In Relying On Pre-*Gordon* District Court Decisions.............. 6

    C. District Court Decisions Deviating From *Gordon* Are Distinguishable. ...... 6

    D. State Courts Cannot Overrule The Ninth Circuit. ........................................ 7

    E. Wagner Admits That He Cannot Prove Common Law Fraud As Required By The Ninth Circuit. ................................................................................ 7

    F. Even If Wagner's Claims Were Not Preempted, Wagner Fails To Allege Facts Upon Which Relief Can Be Granted Under Section 17529.5. ........... 8

    G. Wagner Fails To Address Defendants' Argument That He Lacks Standing To Pursue CAL. BUS. & PROF. CODE § 17538.5 Enforcement. .................. 11

IV. CONCLUSION ................................................................................. 12

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,

4

   622 F. Supp. 2d 935 (N.D. Cal. 2009) ................................................................. 6

*Asis Internet Servs. v. Member Source Media, LLC*,

5

   2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010. ....................................... 6, 10

6

*Asis Internet Servs. v. Subscriberbase Inc.*,

7

   2009 U.S. Dist. LEXIS 112852 (N.D. Cal. Dec. 4, 2009) .......................................... 6

8

*Asis Internet Servs. v. Subscriberbase Inc.*,

   2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010) ........................................... 6

9

*Asis Internet Servs. v. Vistaprint United States, Inc.*,

10

   617 F. Supp. 2d 989 (N.D. Cal. 2009) ..................................................................... 6

*Balsam v. Trancos Inc. et al.*,

11

   203 Cal. App. 4th 1083, 1102-03 (1st Dist. 2012) ............................................... 7, 9, 10

12

*Bell Atlantic Corp. v. Twombly*,

13

   550 U.S. 544, 555 (2007) .......................................................................................... 8

*Beyond Systems v. Keynetics Inc.*,

14

   No. PJM 04-686 (D. Md. Mar. 26, 2007) .................................................................. 6

15

*Clegg v. Cult Awareness Network*,

16

   18 F.3d 752, 754 (9th Cir. 1994) ............................................................................... 8

*Conroy v. Regents of University of California*,

17

   45 Cal. 4th 1244, 1255 (2009) .................................................................................. 4

18

*Davison Design & Development, Inc., et al., v. Cathy Riley*,

   No. 11-2970-PJH .................................................................................................... 1

19

*Farm Raised Salmon Cases*,

20

   42 Cal. 4th 1077 (Cal. 2008) .................................................................................... 7

21

*Free Speech Coalition, Inc. v. Shurtleff*,

   2007 U.S. Dist. LEXIS 21556 (D. Utah Mar. 23, 2007) .......................................... 6

22

*Gordon v. Virtumundo, Inc.*,

23

   575 F.3d 1040, 1063 (9th Cir. 2009) .............................................................. 3, 4, 5, 6

24

*Hoang v. Reunion.com, Inc.*,

   No. C-08-3518 MMC, 2008 U.S. Dist. LEXIS 103659 (N.D. Cal. Dec. 23, 2008)........ 3

25

*Hypertouch, Inc. v. ValueClick, Inc.*,

26

   192 Cal. App. 4th 805, 828 (2d Dist. 2011) .............................................................. 7

27

*Kleffman v. Vonage Holdings Corp.*,

28

   49 Cal. 4th 334, 346 (2010) ..................................................................................... 3, 10

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
  469 F.3d 348 (4th Cir. 2006) ............................................................................. 5

*White Buffalo Ventures LLC v. University of Texas at Austin*,
  420 F.3d 366, 369, 372-3 (5th Cir. 2005) ........................................................ 5

**Statutes**

15 U.S.C. § 7707(b)(1) ............................................................................................ 4

15 U.S.C. § 7707(b)(2) ............................................................................................ 4

CAL. BUS. & PROF. CODE § 17529.5 ................................................. 1, 2, 3, 6, 7, 8, 9, 10, 11

CAL. BUS. & PROF. CODE § 17538.5 ............................................................................ 11

I.     INTRODUCTION

Wagner's late-filed and rambling opposition is a near word-for-word repetition of the opposition to a motion to dismiss his attorney filed in the related *Davison* Action. That matter involved an identical cause of action, identical allegations and identical defendants before another judge of this Court. Wagner's opposition proves two things: (1) that the present action is indeed related to the *Davison* Action, and (2) that the Court should dismiss Wagner's claims for the same reasons such claims were dismissed with prejudice in the *Davison* Action.

As his counsel did in the *Davison* Action, Wagner asks this Court to ignore binding Ninth Circuit authority holding that his claims are preempted by federal law because they do not arise from traditional tort theories of fraud or deception. Even if this Court were to reject binding Ninth Circuit precedent and permit Wagner to bring preempted claims, which it should not, Wagner's claims also fail to state a claim under California law. Defendants' motion should be granted and Wagner's complaint should be dismissed.

II.     STATEMENT OF FACTS AND PROCEDURAL HISTORY

A.     Wagner Is Misleading This Court About The Related *Davison* Action.

As Defendants state in their Motion to Dismiss and their Notice of Pendency of Related Action (see Dkt. No. 21), the present action is related to another matter currently proceeding before Judge Phyllis J. Hamilton of this Court: *Davison Design & Development, Inc., et al., v. Cathy Riley*, No. 11-2970-PJH (the "*Davison*" Action.) In both actions, counsel for the email recipient—Dan Balsam—claims that Spire Vision sent similar advertising emails to his clients in violation of CAL. BUS. & PROF. CODE § 17529.5,[1] and that his clients are entitled to statutory damages, attorneys' fees and costs. (Dkt. No. 21 at 3:18-20.)

The Spire Vision Family filed nearly identical motions to dismiss in both

---

[1] Hereinafter, all section references are to the California Business and Professions Code.

1   lawsuits. (See Motion to Dismiss in the *Davison* Action, attached as Exhibit A to

2   the Declaration of Leeor Neta, dated February 19, 2013 ("Neta Decl."), ¶ 2.)

3   Counsel for Wagner—Dan Balsam—filed nearly identical oppositions to the

4   motions to dismiss in both lawsuits. (See Opposition to Motion to Dismiss in the

5   *Davison* Action, attached as Exhibit B to Neta Decl., ¶ 3.) Judge Hamilton

6   dismissed with prejudice the email recipient's claims in the *Davison* Action,

7   finding they were pre-empted by the federal CAN-SPAM Act. (See Order Granting

8   Motion to Dismiss, attached as Exhibit C to Neta Decl., ¶ 4.)

9       Wagner suggests that Judge Hamilton "partially reversed" this order when

10  she "denied Spire Vision's Motion for Summary Judgment." (Opposition at 5:15-

11  19.) Nothing could be further from the truth. Judge Hamilton did not deny Spire

12  Vision's Motion for Summary Judgment; she took the matter under submission.

13  (See Minute Order, attached as Exhibit D to Neta Decl., ¶ 5.) Moreover, Judge

14  Hamilton did not partially reverse the order dismissing the email recipient's

15  claims. In fact, she stated unequivocally that the email recipient must establish

16  reliance and damages in order to clear the preemption hurdle.[2] (See Neta Decl.,

17  ¶ 6.)

18      Had Judge Hamilton wanted to revisit or reconsider her order dismissing the

19  email recipient's claims with prejudice, she would have done so. Counsel sought

20  leave to file a motion for reconsideration of the order. (See Motion for Leave to

21  File Motion for Reconsideration, attached as Exhibit E to Neta Decl., ¶ 7.) Judge

22  _____

23  [2] Defendants are not sure why Dan Balsam might think that Judge Hamilton partially
    reserved her order. At the hearing on the Motion for Summary Judgment in the *Davison*

24  Action, Judge Hamilton did suggest it was possible that commercial emails that place the
    recipient's name in the from line, e.g.,

25  ChristopherWagnerAdharmonics@Adharmonics.com>, might "sound in tort" and, as
    such, raise a violation of Section 17529.5 that is not preempted by the CAN-SPAM Act

26  to the extent the email recipient proves reliance and damages. (See Neta Decl., ¶ 6.) But
    there is no evidence that such from lines are at issue in this case. And, as in the *Davison*

27  Action, Wagner offers no evidence of reliance or damages.

28

2

**REPLY IN SUPPORT OF MOTION TO DISMISS – 13-0054-YGR**

1   Hamilton denied this request, finding it did not present "any reason for the court to

2   reconsider its previous order." (See Order Denying Motion for Protective Order,

3   Denying Motion for Judgment on the Pleadings, and Denying Leave to File Motion

4   for Reconsideration, attached as Exhibit F to Neta Decl., ¶ 8.) The only order

5   regarding Spire Vision's Motion to Dismiss in the *Davison* Action is the order

6   dismissing the email recipient's claims with prejudice. (See Neta Decl., ¶ 4, Ex. C.)

7       Wagner also makes much ado of three district court rulings all decided after

8   the seminal Ninth Circuit decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040,

9   1063 (9th Cir. 2009). Wagner fails to mention that each of these were reviewed

10   and considered by Judge Hamilton in the *Davison* Action. Defendants do not begin

11   to suggest that this Court is bound by Judge Hamilton's ruling. But the Court

12   should be aware of Dan Balsam's persistence in filing meritless claims until he

13   receives a friendly ruling

14                   **III.   DISCUSSION**

15   **A.   The Ninth Circuit Has Unequivocally Held That CAN-SPAM Preempts
         Anything Other Than Traditional Tort Theories Of Fraud Or**
16       **Deception.**

17       CAN-SPAM preempts all state law claims relating to commercial email

18   except those arising from "traditional tort theories such as claims arising from

19   fraud or deception." *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir.

20   2009) (emphasis added).[3] Even the decisions cited by Wagner find that the CAN-

21   SPAM Act preempts Section 17529.5 where the plaintiff does not plead reliance or

22   damages. *See Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2008 U.S. Dist.

23   LEXIS 103659 (N.D. Cal. Dec. 23, 2008) (order granting defendant's motion to

24   dismiss).

25       Wagner disagrees with *Gordon*, arguing that Congress must have had a

26

27   ---
     [3] The Ninth Circuit's preemption analysis in *Gordon* was also adopted by the California

28   Supreme Court. *Kleffman v. Vonage Holdings Corp.*, 49 Cal. 4th 334, 346 (2010).

different intent than the Ninth Circuit found. But these are arguments that must be taken to the Ninth Circuit. Moreover, Wagner's arguments fail. In arguing that *Gordon* was wrongly decided, Wagner mistakenly focuses exclusively on 15 U.S.C. § 7707(b)(1), which provides that "[i]n general . . . [t]his chapter supersedes any statute . . . that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits falsity or deception[.]" Wagner claims that the words "falsity or deception" are broader than traditional tort theories of fraud. But CAN-SPAM expressly provides otherwise:

> (2) State law not specific to electronic email. This chapter shall not be construed to preempt the applicability of . . . (B) other State laws to the extent that those laws *relate to acts of fraud or computer crime*.

15 U.S.C. § 7707(b)(2) (emphasis added). *Gordon* noted this clarifying language, and held that only claims based on common law fraud—instead of on a nebulous definition of "falsity" that "swallow[s] the rule and undermine[s] the regulatory balance that Congress established"—are saved from preemption. *Gordon*, 575 F. 3d at 1063.

Wagner relies heavily on the use of the phrase "falsity or deception" in Congress's preemption of state law to argue that, contrary to *Gordon*, Congress actually meant a broader definition of fraud than found in common law. (Opposition at 6:5-8:22.) But some states, including California, use those words interchangeably. *E.g.*, *Conroy v. Regents of University of California*, 45 Cal. 4th 1244, 1255 (2009) (holding that the elements of fraud "give rise to the tort of deceit"). As *Gordon* found, Congress sought to eliminate the hodge-podge of state statutes—relying on a variety of different terms—that governed commercial email traffic before CAN-SPAM. *Gordon*, 575 F.3d at 1063-64.

As Wagner admits, the one other federal appellate decision besides *Gordon*

1  that addresses preemption rejects claims like his:[4] *Omega World Travel, Inc. v.*

2  *Mummagraphics, Inc.*,469 F.3d 348 (4th Cir. 2006). In *Omega*, the Fourth Circuit

3  unequivocally agreed that Congress intended to save only "torts involving

4  misrepresentations, rather than to sweep up errors that do not sound in tort," noting

5  that to hold otherwise would create "a loophole so broad that it would virtually

6  swallow the preemption clause itself[.]" *Id*. at 355.

7      Wagner's attempt to distinguish *Gordon* fails because his alleged

8  distinctions are superficial. For example, he dismisses *Gordon* because it failed to

9  evaluate California law. (Opposition at 14:24-15:5.) But *Gordon*'s holding—that

10  state law claims not based on traditional theories of fraud are pre-empted—applies

11  throughout the Ninth Circuit, not just in Washington where *Gordon* was decided.

12      Wagner also notes that the *Gordon* plaintiff claimed to be an Internet service

13  provider. (Opposition at 11:10-13:16). But Gordon and Wagner each pursued state

14  anti-spam claims alleging misrepresented header information, without regard to

15  whether the traditional fraud elements of reliance and damages are present. *Gordon*

16  held such claims were preempted, and this Court should as well.

17      Wagner's claim that his objections are substantively different from Gordon's

18  is both irrelevant and wrong. It is irrelevant because neither Gordon nor Wagner

19  alleged common law fraud, and both are thus pre-empted by CAN-SPAM. And it

20  is wrong because Wagner *raises the same claim* as Gordon. Gordon demanded that

21  an email from line specifically identify the company that sent it. Wagner demands

22  that the from line include the name of the advertiser. (Opposition at 12:23-13:6.)

23  There is no difference between Gordon and Wagner's claims, and each is expressly

24

25  [4] Wagner also cites to *White Buffalo Ventures LLC v. University of Texas at Austin*, 420

26  F.3d 366, 369, 372-3 (5th Cir. 2005). But he admits *White Buffalo* is inapposite.
    (Opposition at 14:6-14.) *White Buffalo* holds only that a state university that provides

27  Internet Service Provider services to its students is not barred from promulgating rules
    specific to its services regulating email traffic.

28

**REPLY IN SUPPORT OF MOTION TO DISMISS – 13-0054-YGR**

1  pre-empted by CAN-SPAM.

2  **B.     Wagner Errs In Relying On Pre-*Gordon* District Court Decisions.**

3          Wagner cites heavily to district court decisions predating the Ninth Circuit's

4  sweeping holding in *Gordon*. Specifically, he relies on *Asis Internet Servs. v.*

5  *Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935 (N.D. Cal. 2009), *Asis*

6  *Internet Servs. v. Vistaprint United States, Inc.*, 617 F. Supp. 2d 989 (N.D. Cal.

7  2009), *Free Speech Coalition, Inc. v. Shurtleff*, 2007 U.S. Dist. LEXIS 21556 (D.

8  Utah Mar. 23, 2007), and *Beyond Systems v. Keynetics Inc.*, No. PJM 04-686 (D.

9  Md. Mar. 26, 2007). But as the *Vistaprint* Court noted, at the time of its decision,

10 "there is no appellate authority in this circuit, and lower courts are not in

11 agreement." *Vistaprint*, 617 F.Supp.2d at 992. Similarly, *Asis Internet Servs. v.*

12 *Subscriberbase Inc.*, 2009 U.S. Dist. LEXIS 112852 at *8-9 (N.D. Cal. Dec. 4,

13 2009), makes no mention of *Gordon* and instead relies on a "split" in District Court

14 decisions. The Ninth Circuit has resolved the disagreement, and Wagner's reliance

15 on cases that predate or do not address *Gordon* is misplaced.

16 **C.     District Court Decisions Deviating From *Gordon* Are Distinguishable.**

17         Wagner relies heavily on *Asis Internet Servs. v. Subscriberbase Inc.*, 2010

18 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010) and *Asis Internet Servs. v.*

19 *Member Source Media, LLC*, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20,

20 2010. But the *Subscriberbase* Court found that *Gordon* prohibited state statutes

21 that increased the regulatory burden on Internet businesses. *Asis Internet Servs. v.*

22 *Subscriberbase Inc.*, 2010 U.S. Dist. LEXIS 33645 at * 36. Wagner's

23 interpretation of Section 17529.5—imposing detailed email labeling

24 requirements—dramatically increases the regulatory burden.

25

26 ───────────────
   [5] *Asis Internet Servs. v. Member Source Media, LLC*, 2010 U.S. Dist. LEXIS 47865 at
27 *9-10 (N.D. Cal. Apr. 20, 2010) adopts the reasoning of *Asis Internet Servs. v.*
   *Subscriberbase Inc.*, 2010 U.S. Dist. LEXIS 33645 (N.D. Cal. Apr. 1, 2010).
28

**REPLY IN SUPPORT OF MOTION TO DISMISS – 13-0054-YGR**

**D.     State Courts Cannot Overrule The Ninth Circuit.**

It is axiomatic that state intermediate courts cannot dictate preemption to the Ninth Circuit. Accordingly, Wagner's reliance on *Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 828 (2d Dist. 2011) and *Balsam v. Trancos Inc., et al.*, 203 Cal. App. 4th 1083, 1102-03 (1st Dist. 2012) is simply misplaced. California state courts cannot dictate the scope of federal preemption to federal courts, and the California appellate division misinterpreted the plain language of *Gordon* in holding that California was entitled to regulate email labeling.

Wagner misrepresents the holding in *Trancos*, *supra*, claiming that the court found that generic text in the from name violates California law. (Opposition at 13:7-12.) *Trancos* merely held that the use of untraceable, privately registered domain names to conceal the senders' identify violates Section 17529.5. 203 Cal. App. 4th at 1098. Wagner does not claim that any of the Defendants have used unregistered or even privately registered domain names to send him emails.

Wagner's reliance on *Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (Cal. 2008) is mystifying. (Opposition at 20:21-24.) In *Farm Raised Salmon*, the California Supreme Court held that California's food labeling requirements were not pre-empted because federal law expressly allowed state regulation "identical to" federal requirements. *Id*. But Wagner's claims are predicated on Section 17529.5's differences from CAN-SPAM, and on his theory that California may establish a definition of "falsity" that is different from federal law. (Opposition at 9:1-14.)

**E.     Wagner Admits That He Cannot Prove Common Law Fraud As Required By The Ninth Circuit.**

Wagner does not claim he was misled. Nowhere does he claim that he actually relied on the header information he alleges is misleading in nature. (Complaint at ¶¶ 49-125.) Nor does he allege any harm beyond the mere receipt of emails; instead of alleging that he was personally harmed, he cites to dated

1  generalities in California's legislative history of potential harm from spam.

2  (Opposition at 2:15-3:11.)

3      Wagner contends that he should be allowed to tell a jury that he is entitled to

4  money because he received an email with the from line reading "Auto Insurance"

5  rather than "Provide-Insurance." (Opposition at 12:20-13:6). Wagner's lawsuit

6  epitomizes why CAN-SPAM prevents opportunistic plaintiffs like him from suing,

7  and why Congress preempted state email regulation based on anything other than

8  traditional tort theories of fraud. The requirement that claims arise from traditional

9  common law claims including the elements of reliance and damages provides a

10  safeguard against abuse while still providing recourse to parties with legitimate

11  grievances. In contrast, Wagner's claims are contrived, and they are preempted by

12  federal law.

13

14  **F.   Even If Wagner's Claims Were Not Preempted, Wagner Fails To Allege
       Facts Upon Which Relief Can Be Granted Under Section 17529.5.**

15      Wagner raises claims regarding allegedly falsified or misleading from lines,

16  and allegedly misleading "subject" lines. All of Wagner's claims are preempted by

17  CAN-SPAM. But even if they were not, the claims do not satisfy the elements of

18  Section 17529.5. Wagner's allegations must be based on facts, and not speculation.

19  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And although every

20  factual allegation in the Complaint is assumed to be true, Wagner must still

21  identify facts that entitle him to relief. *Clegg v. Cult Awareness Network*, 18 F.3d

22  752, 754 (9th Cir. 1994).

23      Wagner claims that 9 emails with subject lines such as "Fruit or Chocolate?

24  Take Our $25 Snack Giftcard Survey" violate Section 17529.5 because he believes

25  that the surveys require respondents to buy, lease or sign up for goods or services

26  and the subject lines do not refer to these believed requirements. (Opposition at

27  23:23-24:17.) There is no evidence to support Wagner's belief. Following

28  Wagner's logic, any commercial email recipient could state a violation of

8

**REPLY IN SUPPORT OF MOTION TO DISMISS – 13-0054-YGR**

1   Section 17529.5 by simply asserting a belief about a commercial offer that is not

2   reflected in an email's subject line. Here, Wagner admits that he did not participate

3   in the survey. He admits that has no personal knowledge of the requirements for

4   participation. Wagner merely "believes" that purchase requirements exist.

5   (Opposition at 23:23-24:17.) Again, such frivolous claims demonstrate why

6   Congress intended to prevent email recipients from suing where there was no

7   evidence of either reliance or damages.

8       Similarly, Wagner's email from line claims fail to allege a cause of action on

9   which relief can be granted. Emails must "contain[] or [be] accompanied by

10  *falsified, misrepresented, or forged* header information" in order to violate CAL.

11  BUS. & PROF. CODE § 17529.5 (a)(2) (emphasis added). Wagner admits that a from

12  line need not disclose the specific name of the advertiser, but bizarrely complains

13  that a few of the from lines do not contain the actual names of the advertisers,

14  "e.g., 'Adharmonics Inc.,' 'Adharmonics,' 'Provide-Insurance,' 'Provide-

15  Insurance.com,' or 'Spire Vision for Provide-Insurance.com.' " (Opposition at

16  12:23-13:6.)

17      Wagner should know that a from line need not describe the sender.

18  (Opposition at 22:1-24:5.) In Balsam v. Trancos Inc, .et al, 203 Cal. App. 4th 1083,

19  1098 (1st Dist. 2012)—a lawsuit brought by counsel for Wagner, Dan Balsam, on

20  his own behalf—the California Appellate division acknowledged that "fanciful"

21  domain names were not "falsified, misrepresented, or forged" and found that only

22  domain names that are "made-up and untraceable" violated Section 17529.5.

---

23  [6] Wagner appears to suggest that it is easier to detect unwanted commercial email when a

24  from line accurately discloses the sender or advertiser. (Opposition at 12:23-13:2.) "Spam
    filters do not depend on from lines. Spam filters operate mainly by scanning the content

25  of incoming email for certain popular keywords associated with known spam."
    (http://www.ehow.com/how-does_5128712_do-spam-filters-work.html.) "An example of

26  this would be scanning an email for words associated with some kind of money

27  laundering scam, or for words relating to an attempt to sell a product or some kind of
    other service." (Id.)

28

1   (Emphasis added); see also Asis Internet Servs. v. Member Source Media, LLC,

2   2010 U.S. Dist. LEXIS 47865 at *13-14 (holding that messages sent from accounts

3   with domain names such as <greenthe.com>, <consumerbargrewards.com>, and

4   <innocenttruthrevealed.com> did not violate Section 17529.5). As the California

5   Supreme Court recognized, a domain name in an email does not make any

6   "'representation' regarding the email's source . . . so it cannot be said to constitute

7   'misrepresented' information within the meaning of Section 17529.5 (a)(2)."

8   *Kleffman*.

9        Wagner does not allege that any email from lines are untraceable. Instead, he

10  admits he could readily identify the sender from publicly available records, but

11  claims that the WHOIS and UPS Store records led to "fictitious business names,"

12  in particular, Junctionights and Youradshere (Opposition at 14:4-13.) Wagner does

13  not allege facts supporting this claim. In fact, Junctionights and Youradshere are

14  very real domain names that are owned and operated by the Spire Vision Family.

15  (See Dkt. No. 44, ¶¶ 17-18.) Wagner used the publicly available UPS Store records

16  to serve these DBAs. (See Complaint, ¶¶ 27, 31.) And Wagner's Complaint

17  accurately identifies Junctionlights and Youradshere as "subsidiary[ies] or

18  division[s] or brand[s] of XL Marketing Corp. and/or its subsidiaries." (Id.)

19        A claim functionally identical to Wagner's was rejected by the California

20  Supreme Court in *Kleffman*.  In *Kleffman*ₛ the Court held that a series of emails

21  with from lines such as <superhugeterm.com>, <lowdirectsme.com> and other

22  fanciful names did not violate Section 17529.5 because each could be traced to a

23  "marketing agent." *Kleffman*, 49 Cal. 4th 334. Here, each can be traced to one of

24

25  ─────────────
    [7] There is no support for Wagner's overly narrow reading of *Kleffman* (see Opposition at
26  5-8): "We read *Kleffman* commonsensically . . . to mean that a domain name is
    "traceable" to the sender if the recipient of an e-mail could ascertain the sender's identity
27  and physical address through the use of a publicly available database such as WHOIS."
    *Trancos*, 203 Cal. App. 4th 1083, 1098.
28

the named defendants or a "subsidiary or division or brand of XL Marketing Corp. and/or its subsidiaries". (See Complaint, ¶¶ 26-31.)

Tellingly, Wagner does not allege that he was unable to locate or contact any member of the Spire Vision Family that allegedly sent him an email. The fact that Wagner chose not to join entities that had registered domain names such as IPTech Monitor, does not suggest that the emails containing these domain names are untraceable or that the Spire Vision Family is somehow associated with these domain names. Wagner located the defendants he chose to locate and served the defendants he chose to serve. Wagner does not now challenge their corporate existence or standing to bring suit. His allegations under Section 17529.5 fail.

**G.   Wagner Fails To Address Defendants' Argument That He Lacks Standing To Pursue CAL. BUS. & PROF. CODE § 17538.5 Enforcement.**

In their motion to dismiss, Defendants explained that Wagner lacks standing to bring a cause of action under Section 17538.5. Defendants offered two reasons: (1) the statute does not permit a private citizen to pursue an action seeking money damages, and (2) the statute requires that a private citizen plaintiff suffer actual injuries. (Motion at 14:22-15:2.) Wagner ignores these arguments. Instead, he attempts a strained reading of the statutory language "offering for sale," for which he presents no support whatsoever. The weakness of this allegation suggests that it was added in an effort to obscure telling connections to the *Davison* Action. His allegations under Section 17538.5 fail.

//

//

1

## IV.   CONCLUSION

2      Wagner opportunistically seeks statutory damages and attorneys' fees from

3 26 "parties" based on the receipt of a few emails. But his claims are preempted by

4 federal law. Even if they were not, Wagner's allegations do not satisfy the

5 elements of any state law claim. Wagner's attempt to misuse the court system in

6 the pursuit of riches should be denied, and his complaint dismissed.

7

8      Respectfully submitted this 19th day of February 2013.

9

10                                   **NEWMAN DU WORS LLP**

11

12                                   s/ Leeor Neta
                                     John Du Wors, State Bar No. 233913
13                                   Leeor Neta, State Bar No. 233454
                                     Attorneys for Defendants
14                                   The Spire Vision Family

15

16

17

18

19

20

21

22

23

24

25

26

27

28